UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18-cr-00108-FDW-DSC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| SHI YUN ZHOU, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER is before the Court on Defendant's *pro se* Motion for Compassionate Release, (Doc. No. 60), and supplemental filings in support of his Motion, (Doc. Nos. 66, 69, 70, 71). The Government subsequently filed Responses opposing Defendant's Motion and supplemental filings. (Doc. Nos. 63, 68). For the reasons that follow, Defendant's Motion is DENIED.

## I.     Background

On August 23, 2018, Defendant plead guilty to Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine and Marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B) ("Count 1"), Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) ("Count 2"), and Distribute and Possess with Intent to Distribute Cocaine and Aiding and Abetting in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2 ("Count 7"). See generally (Doc. Nos. 3, 20, 21, 22). On January 30, 2019, Defendant was sentenced by this Court to three concurrent sentences of 108-months imprisonment followed by four years of supervised release. (Doc. No. 36). Defendant is currently imprisoned at Williamsburg

1

FCI, a Bureau of Prisons ("BOP") facility in South Carolina with a projected release date of December 2, 2025. (Doc. No. 60, p. 6).[1]

Defendant's convictions originate from a major drug trafficking scheme within the Western District of North Carolina ranging from 2013 through the date of his arrest in April 2018. (Doc. No. 28, p. 4). Defendant was audio and video recorded conducting six controlled buys with confidential informants ("CI") of large quantities of cocaine. Id. at pp. 6-9. Upon execution of a search warrant for Defendant's residence, law enforcement recovered $215,106 in cash, nearly a dozen pounds of marijuana, two bags of Percocet pills, two bags of cocaine, one stolen Ruger 9mm pistol loaded with four rounds of ammunition, one Ruger .223 AR rifle with two magazines containing twenty rounds of ammunition, and one Kel-Tec .22 caliber pistol. Id. at p. 10. Defendant admitted to trafficking narcotics (including between 772 and 1,155 kilograms of marijuana and approximately 560 grams of cocaine) with firearms. Id. at pp. 10-11. Further, Defendant admitted to using his mother's business bank account to conceal and launder his proceeds from the drug trade. Id. p. 11.

On April 24, 2020, Defendant filed a Motion for Compassionate Release, (Doc. No. 56), generally citing the COVID-19 Pandemic as an "extraordinary and compelling" reason to reduce his sentence to time served after only serving one-fourth of his sentence. This Court entered an Order Denying Defendant's Motion on June 29, 2020, (Doc. No. 59), finding that Defendant failed to exhaust his administrative remedies. Further, continuing to the merits of Defendant's Motion, this Court concluded that "Defendant also failed to provide any 'extraordinary and compelling reasons' for his release." Id. at p. 3. Undeterred, Defendant's instant Motion, filed January 14,

---

[1] See https://www.bop.gov/inmateloc/, visited 5/10/2022.

2021, largely copies and pastes the substantive majority of his April 2020 Motion, and advances many of the same arguments previously ruled on. Nonetheless, the Court will conduct another complete review of Defendant's arguments and record.

## II.        Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

Six months following this Court's denial of Defendant's first compassionate release Motion, Defendant again petitions the Court for similar relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), seeking either a sentence reduction to time served, or to be released to home confinement or probation. (Doc. No. 60). Generally, federal courts "may not modify a term of imprisonment once it has been imposed." Dillon v. United States, 560 U.S. 817, 819 (2010) (citing 18 U.S.C. § 3582(c)). However, the Fourth Circuit has stated that "[t]he COVID-19 pandemic has understandably prompted an increasing number of inmates to file motions for compassionate release. . . . authoriz[ing] district courts to reduce terms of imprisonment upon finding 'extraordinary and compelling reasons.'" United States v. High, 997 F.3d 181, 185 (4th Cir. 2021). Section 3582(c)(1)(A) was amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, allowing defendants to seek such reductions "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(A)(i).

Therefore, in order to grant compassionate release, this Court must: (1) determine whether extraordinary and compelling reasons warrant such a reduction; (2) determine whether such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission; and (3) consider the factors set forth in § 3553(a) "to the extent they are applicable."

3

18 U.S.C. § 3582(c)(1)(A)(i); see also United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022), United States v. McCoy, 981 F.3d 271, 280 (4th Cir. 2020), United States v. Kibble, 992 F.3d 326, 330 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021) (per curiam) (noting the district court's consideration of § 3553(a) factors should be "consistent with the applicable policy statements issued by the Sentencing Commission." (internal quotations omitted)). As the Sentencing Commission has lacked a quorum since Congress enacted the First Step Act, and thereby has not updated U.S.S.G. § 1B1.13, the Guidelines "remain[ ] helpful guidance even when motions are filed by defendants."[2] McCoy, 981 F.3d at 282 n.7. Nonetheless, the Court should independently determine whether "extraordinary and compelling reasons" warrant a sentence reduction following consideration of § 3553(a) sentencing factors "to the extent that they are applicable." Hargrove, 30 F.4th at 195; see also McCoy, 981 F.3d at 284 (stating that "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" (citing United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020); emphasis in original)). In arriving at a decision in this matter, the Court need not acknowledge and address each of defendant's arguments, as there are instances where "minimal explanation suffices."[3] High, 997 F.3d at 189 (internal quotations omitted); see also Chavez-Meza v. United States, 138 S. Ct. 1959, 1965 (2018). The Court will examine each of these procedural steps in turn.

---

[2] The Fourth Circuit has recognized that "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)" because the policy statement was adopted prior to the passage of the First Step Act, which only provided guidance for BOP-filed motions. McCoy, 981 F.3d at 282.

[3] The Court acknowledges one of Defendant's "extraordinary and compelling reasons" for release includes reference to "Superior Court Criminal Rule CrR 7.8(b)." (Doc. No. 60, p. 3). Defendant's reliance on the State of Washington's Rules of Criminal Procedure is neither persuasive nor relevant to this Court's decision and will not be addressed further.

4

### A. Exhaustion of Administrative Remedies

Here, the Government concedes that Defendant made a request to the BOP for compassionate release, and it was subsequently denied. (Doc. No. 63, p. 8). Defendant has also attached sufficient evidence of such denial. (Doc. No. 60-1, pp. 7-17). Therefore, it is clear from the record that Defendant exhausted his administrative remedies in compliance with § 3582(c)(1)(A).

### B. Extraordinary and Compelling Reasons

Defendant contends there are "extraordinary and compelling reasons" that warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). While the statute fails to define what qualifies as extraordinary and compelling reasons, the Sentencing Commission provides persuasive guidance U.S.S.G. § 1B1.13.[4] The Guidelines note various considerations that may justify a sentence reduction, including if Defendant is suffering from a serious medical condition, is at an advanced age, certain family circumstances, and other reasons "[a]s determined by the Director of the [BOP]; however, "rehabilitation, by itself, is not an extraordinary and compelling reason for a reduction." U.S.S.G. § 1B1.13, cmt. n.1, 3. While none of the circumstances described by the Sentencing Commission in their policy statements are applicable to Defendant's allegations, the Court will nonetheless consider "*any* [other] extraordinary and compelling reason for release that a defendant might raise." McCoy, 981 F.3d at 284 (emphasis in original).

---

[4] The Guidelines delineate subdivision (2)—"the defendant is not a danger to the safety of any other person or to the community"—as a prerequisite for the Court imposing a sentence reduction based on the applicable policy statements and commentary. However, § 3582(c)(1)(A) only requires this dangerousness finding when making a determination pursuant to subsection (ii). Nonetheless, as McCoy instructs, the gap in revisions to the Guidelines following the enactment of the First Step Act "remains helpful guidance," however, they are not binding. 981 F.3d at 282 n.7; see also United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020) (stating "the Sentencing Commission's statements may inform a district court's discretion for compassionate release motions, but they are not binding.") (cleaned up).

In the case at hand, Defendant generally asserts the COVID-19 Pandemic warrants a sentence reduction to time served. (Doc. No. 60, p. 2). The Court, again, disagrees. The Fourth Circuit has stated that compassionate release motions should "balance the severity of the inmate's personal circumstances . . . against the needs for incarceration," under the totality of the relevant circumstances, by applying a standard that requires inmates to prove: (1) a *particularized susceptibility* to COVID-19, and (2) a *particularized risk* of contracting the disease at his prison facility. Hargrove, 30 F.4th at 196-97 (emphasis added). Defendant fails to articulate either particularized risk criteria.

### 1.      Particularized Susceptibility to COVID-19

First, Defendant asserts he is "a person at high risk of not recovering from contracting the virus" because "[a]s a child, [he] suffered from chronic respiratory conditions which affected [his] breathing" and has "a family history of lung cancer and high blood pressure." (Doc. No. 60, pp. 2-3). The Fourth Circuit has recently held there is no bright-line rule where conditions not listed at the CDC's highest risk category can "never qualify as extraordinary and compelling reasons to reduce a sentence." Hargrove, 30 F.4th at 195. However, Defendant proffers no evidence of his individualized susceptibility of contracting COVID-19 beyond generalized allegations of a childhood respiratory condition and a family history of lung cancer and hypertension. The Court has reviewed all of Defendant's medical documents within the record, and there is no evidence indicating Defendant has exhibited any of the symptoms of the childhood condition he reports while incarcerated.

Ironically, within Defendant's medical records is an informed consent form in which he declines to receive the COVID-19 vaccination on January 12, 2021 – just two days prior to filing

6

his Motion. (Doc. No. 63-1, p. 47). Courts within this circuit have been unsympathetic to Defendants they deem are attempting to "manufacture [their] own 'extraordinary and compelling' circumstances" by refusing the COVID-19 vaccine. United States v. Griffin, No. 4:18-CR-00089-DCC-1, 2021 WL 4411773, at *3 (D.S.C. Sept. 27, 2021). See, e.g., United States v. Hargrove, No. 3:17-CR-167-MOC-DCK-1, 2021 WL 2210844, at *4 (W.D.N.C. June 1, 2021) (concluding defendant's obesity does not qualify as extraordinary and compelling because he had refused to be vaccinated); United States v. Jacobs, No. 3:04-CR-00277-KDB-DCK-1, 2021 U.S. Dist. LEXIS 92819, at *2 (W.D.N.C. May 17, 2021) (denying compassionate release where defendant refused COVID-19 vaccine, stating: "Defendant's own behavior [in refusing vaccination] is inconsistent with his position that he believes he is at increased risk from the virus" (quoting United States v. Williams, No. CR1701279001PHXDLR, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021)). While this Court does not *solely* rest its decision on this one fact, especially in light of Defendant eventually becoming vaccinated during the pendency of this Motion, the Court "cannot ignore the inconsistency of petitioning for compassionate release based on the risk of contracting COVID-19 while simultaneously refusing a highly effective medical intervention to reduce that risk." Griffin, 2021 WL 4411773, at *3; see also United States v. Greenlaw, No. 1:18-CR-00098-JAW-06, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021), appeal dismissed, No. 21-1309, 2021 WL 8155002 (1st Cir. Nov. 17, 2021) ("To reward [the defendant] for his vaccination refusal would create a perverse incentive for defendants like [him] to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions."); but see United States v. Petway, No. 21-6488, 2022 WL 168577, at *3 (4th Cir. Jan. 19, 2022) (per curiam) (declining to resolve the issue of whether courts are precluded from finding extraordinary and

compelling reasons when the defendant has been vaccinated as a per se rule); <u>United States v. Hunter</u>, No. 21-7424, 2022 WL 385542, at *1 (4th Cir. Feb. 8, 2022) (per curiam) (vacating the district court's order due to overreliance on the fact that the defendant refused to be vaccinated, but later became vaccinated after the court dismissed his motion).

Since Defendant has not articulated any *current* condition with particularity that would create an individualized susceptibility to COVID-19, his claim fails to overcome the basic threshold requirement <u>Hargrove</u> sets forth. Defendant does not advance any CDC data or evidence reflecting a nexus between his alleged childhood condition or family history of illness, and his *current* increased vulnerability to the COVID-19 virus. As such, the Court concludes that Defendant's medical evidence fails to establish a particularized susceptibility to warrant release for extraordinary and compelling reasons. <u>See</u> <u>Hargrove</u>, 30 F.4th at 196 (holding that the district court did not abuse its discretion by finding the defendant failed to proffer sufficient evidence that his current conditions *might* increase his risk of serious illness or death from COVID-19); <u>see also</u> <u>United States v. Hood</u>, No. 5:18-CR-00005-KDB, 2020 WL 2091070, at *3 (W.D.N.C. Apr. 30, 2020) ("Without a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility, the Court will not grant a motion for compassionate release based on COVID-19 concerns.").

### 2. Particularized Risk of Contracting COVID-19 at Williamsburg FCI

The thrust of Defendant's argument for compassionate release is aimed at the notion that prisons, based on their inherent design, are at a heightened risk for transmission of COVID-19.[5]

---

[5] The Court notices that Defendant largely copied and pasted the gist of his argument and corresponding support from his April 2020 Motion, which was rejected by this Court in June 2020, (Doc. No. 59). <u>Compare</u> (Doc. No. 56, pp. 1-2) <u>with</u> (Doc. No. 60, p. 5).

8

The Court does not dispute that the general risks of contracting COVID-19 are aggravated in the prison context. However, the mere existence of the COVID-19 pandemic poses a threat to every non-immune individual in the world. Without a proper showing of particularized susceptibility, the Court cannot properly weigh the alleged environmental risks against Defendant's particular susceptibility. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Colleton, No. 21-6015, 2022 WL 18500 at *1 (4th Cir. Jan. 3, 2022) (affirming the district court's determination that general complaints of COVID-19 being particularly serious and highly communicable in the prison context was insufficient to demonstrate an extraordinary and compelling reason for release).

However, Williamsburg FCI currently reports *zero* active COVID-19 cases within its facility – both prisoners and staff.[6] Even in light of the fact that Defendant proffers a particular instance on December 21, 2020, that alleges a minor outbreak (three inmates out of over 1,000 tested positive), what is clear from Defendant's filings is that prison staff acted swiftly to remove, isolate, and minimize the spread of the virus. It is not this Court's role to micromanage the BOP's regulations as it relates to the COVID-19 virus. Turner v. Safley, 482 U.S. 78, 89 (1987) (holding that prison regulations will be upheld if they are "reasonably related to legitimate penological interests."). Clearly, the BOP is doing something right if, at the time of this Order, only four out of the 5,055[7] federal inmates in the entire state of South Carolina are currently positive for COVID-19. Therefore, the Court finds that Defendant has failed to demonstrate a particularized risk of

---

[6] See https://www.bop.gov/coronavirus/, visited May 10, 2022.
[7] See https://www.bop.gov/about/statistics/population_statistics.jsp, visited May 10, 2022.

9

contracting the virus at his prison facility. <u>Hargrove</u>, 30 F.4th at 196-97. The Court also concludes Defendant has failed to carry his burden to sufficiently establish that the *combined* impact of Defendant's potential to develop underlying health conditions, the threat of the COVID-19 pandemic, and the conditions of his confinement within the BOP system warrants a sentence reduction under § 3582(c)(1)(A)(i).[8]

Defendant focuses the entirety of his argument on "extraordinary and compelling reasons" for release based on COVID-19, failing to address any § 3553(a) sentencing factors. By neglecting to proffer such an argument, Defendant has also not produced *any* evidence or basis that would allow the Court to weigh against the needs for incarceration in light of the § 3553(a) factors as initially considered by this Court at his original sentencing hearing. <u>Hargrove</u>, 30 F.4th at 196-97. Without any argument from Defendant and based on the record before it, the Court summarily concludes that a sentence reduction would not satisfactorily protect the public from Defendant's future crimes, promote respect for the law, or afford adequate deterrence, and it is not necessary to further "provide an exhaustive explanation analyzing every § 3553(a) factor." <u>United States v. Jenkins</u>, 22 F.4th 162, 170 (4th Cir. 2021); <u>see also</u> <u>United States v. Colleton</u>, No. 2:08-CR-581-DCN, 2020 WL 7352577 (D.S.C. Dec. 15, 2020), <u>aff'd</u>, No. 21-6015, 2022 WL 18500 (4th Cir. Jan. 3, 2022).

---

[8] <u>See</u> <u>e.g.</u>, <u>Kibble</u>, 992 F.3d at 333–34 (Gregory, C.J., concurring) ("Here, Mr. Kibble identified three circumstances that, collectively, qualified as extraordinary and compelling: (1) the uncontrolled spread of COVID-19 at FCI Elkton, (2) his tricuspid atresia, and (3) his non-alcohol related cirrhosis of the liver. The district court agreed and so found. At the time of Mr. Kibble's motion, nearly 25% of Elkton's population had contracted COVID-19; nine inmates had died as a result. The ACLU of Ohio and the Ohio Justice & Policy Center had named FCI Elkton as a defendant in a class action suit challenging the facility's conditions of confinement during the pandemic. And, at the time of Mr. Kibble's motion, Elkton was subject to a preliminary injunction aimed at correcting the facility's mismanagement. <u>See</u> <u>Wilson v. Williams</u>, 455 F. Supp. 3d 467, (N.D. Ohio 2020), <u>vacated by</u> <u>Wilson v. Williams</u>, 961 F.3d 829, 833 (6th Cir. 2020). This combination of factors rightly gave rise to the extraordinary and compelling circumstances animating this case."). In contrast, Defendant here has failed to provide a sufficient combination of factors, supported by the record, to support a finding of extraordinary and compelling reasons.

10

### III.    Conclusion

For the reasons stated above, IT IS THEREFORE ORDERED that Defendant's Motion for Compassionate Release, (Doc. No. 60), is DENIED.

IT IS FURTHER ORDERED that Defendant's related motions, (Doc. Nos. 66, 70, 71), are DENIED AS MOOT.

IT IS SO ORDERED.

Signed: May 12, 2022

Frank D. Whitney
United States District Judge

11